IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAREN JEAN ERWIN and ALBERT SIDNEY ERWIN, JR., Plaintiffs, | § § § § | |
| v. | § § | No. 3:23-CV-1561-K |
| METALCRAFT OF MAYVILLE, INC. D/B/A SCAG POWER EQUIPMENT, SCAG POWER EQUIPMENT, A DIVISION OF METALCRAFT OF MAYVILLE, INC., and SCAG POWER EQUIPMENT DIVISION., Defendant. | § § § § § § § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court is a motion for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, filed on September 12, 2024, by Defendant Metalcraft of Mayville, Inc., d/b/a Scag Power Equipment, a division of Metalcraft of Mayville, Inc., (incorrectly identified as Metalcraft of Mayville, Inc., d/b/a Scag Power Equipment; Scag Power Equipment, a Division of Metalcraft of Mayville, Inc. and Scag Equipment Division) ("Metalcraft"). (Dkt. No. 27.)

The motion was referred to the undersigned United States magistrate judge on December 4, 2024, for hearing, if necessary, and findings and recommendation. (*See* Dkt. No. 37.) Having considered the motion, the response, the reply, the evidence, and the applicable law, the undersigned recommends that Defendant's Motion for Summary Judgment (Dkt. No. 27) be **DENIED**.

# I.  BACKGROUND

## A.    Procedural Background.

Plaintiffs Karen Jean Erwin and Albert Sydney Erwin, Jr., wife and husband, filed this lawsuit on July 13, 2023, alleging state-law product liability and negligence claims against Defendant.  (*See* Dkt. No. 1 ("Compl.").)  Plaintiffs are the owners of a Scag Tiger Cub riding lawnmower which was designed, manufactured, and distributed for sale by Scag Power Equipment ("Scag"), a division of Metalcraft.  (*Id.* ¶ 3.2; *see also* Def. Br. at 1.)  Plaintiffs allege that the Scag Tiger Cub mower "was defectively designed, defectively manufactured, defectively marketed, and unreasonably dangerous for reasons principally related to its safety and guarding features."  (Compl ¶ 4.4.)  In addition, Plaintiffs allege Defendant "owed a duty to Plaintiffs to exercise the reasonable care in the design, manufacture, supply, assembly, marketing, and use of the Lawnmower to the Plaintiffs and to the public" and Defendant's "acts and/or omissions constitute a breach of such duty … and were, therefore, negligent."  (*Id.* ¶ 5.2.)

On September 12, 2024, Defendant filed the present motion for summary judgment (Dkt. No. 27), a supporting brief (Dkt. No. 28) ("Def. Br."), and an appendix (Dkt. No. 29) ("Def. App.").  Thereafter, on October 2, 2024, Plaintiffs filed a response (Dkt. No. 30), a supporting brief (Dkt. No. 31) ("Pl. Br."), and an appendix (Dkt. Nos. 32-34) ("Pl. App.").  On October 4, 2024, Defendant filed a reply (Dkt. No. 35) ("Reply"), accompanied by an affidavit (Dkt. No. 36).

Accordingly, the motion is ripe and ready for determination. Plaintiffs' original complaint (Dkt. No 1) ("Compl."), remains the live complaint in this action.

In support of its summary judgment motion, Defendant submits an appendix containing evidence described as:

- Karen Erwin Deposition Exhibit 1, ERWIN_0001, Picture of Tiger Cub Lawnmower (Def. App. 001);

- Karen Erwin Deposition Transcript 04/25/2024 (Def. App. 002-095) (("K. Erwin Dep.");

- Albert Erwin Deposition Transcript 04/25/2024 (Def. App. 096-125) ("A. Erwin Dep.");

- Karen Erwin Deposition Exhibit 1, ERWIN_0009, Diagram of Tiger Cub Lawnmower (Def. App. 126);

- Karen Erwin Deposition Exhibit 2, ERWIN_0044, Picture of warning on Scag Tiger Cub Lawnmower (Def. App. 127); and

- Karen Erwin Deposition Exhibit 2, ERWIN_0048, Picture of warning on Scag Tiger Cub Lawnmower (Def. App. 128).

In opposition to summary judgment, Plaintiffs submit an appendix containing evidence described as:

- Plaintiffs' First Request for Production and First Interrogatories to Defendant (Pl. App. 001-019);

- Defendant's Response to Plaintiffs' First Request for Production of Documents (Pl. App. 020-195);

- June 13, 2004 correspondence from C. Riordan to C. Ayres including documentation (Pl. App. 196-488);

- Deposition transcript of Karen Jean Erwin (Pl. App. 489-525) ("K. Erwin Dep.");

- Deposition transcript of Kevin B. Sevart (Pl. App. 526-648) ("Sevart Dep.");

- Article regarding lawn mower injuries from NIH Webpage (Pl. App. 649);

- Article regarding lawn mower safety from TDI Webpage (Pl. App. 650-51);

- Exemplars of competitor mowers (Pl. App. 652-62);

- Scag Homepage (Pl. App. 663);

- Scag "About Us" Homepage (Pl. App. 664);

- Receipt for Scag Lawnmower (Pl. App. 665);

- Scag representation regarding mower (Pl. App. 666);

- Scag placard on mower (Pl. App. 667);

- Affidavit of Christopher S. Ayres (Pl. App. 668-69); and

- Scag black chute on mower (Pl. App. 670).

All evidence presented is cited to the corresponding Def. App. or Pl. App. page number(s).  Deposition testimony is additionally cited to the corresponding deposition transcript page number(s) and line number(s).

## B.    Factual Background.

On or about November 21, 2020, Mrs. Erwin was operating the couple's Scag Tiger Cub lawnmower to mow leaves on the lawn of their home.  (Compl. ¶ 3.4.) While mowing leaves, "debris/leaves accumulated on the top of the right side/deck of the [Scag Tiger Cub lawnmower] near her right foot."  (*Id.* ¶ 3.5.)  Mrs. Erwin "brought the Lawnmower to a stop and reached with her right hand to brush away debris/leaves."  (*Id.*)  She did not turn off the lawnmower or disengage the blades before reaching her hand in to brush away the leaves.  (*See* Def. Bf. at 8.)  Her "right

4

hand came into contact with the drive belt and then was pulled in a manner that resulted in the severing of two fingers on her right hand." (Compl. ¶ 3.6.)

Plaintiffs purchased their Scag Tiger Cub lawnmower new in 2010. (Def. App. 019, K. Erwin Dep.18:3-6.) Plaintiffs acknowledge that the mower came with an operator's manual. (Def. App. 104, A. Erwin Dep. 9:3-5.) Mrs. Erwin does most of the mowing at Plaintiffs' residence. (Def. App. 023, K. Erwin Dep. 22:14-15.) She testified that the first time she looked at the operator's manual was a few years after the purchase. (Def. App. 031-032, K, Erwin Dep. 30:18-31:11.) She stated she looked at the manual to figure out how to adjust the rollbar down to avoid hitting trees. (Def. App. 032, K. Erwin Dep. 31:12-18.) She also stated she was aware that there was a knob on the lawnmower's control panel that engaged and disengaged the lawnmower's blades; she knew that if you pushed the knob down, "within seconds" the blades would disengage and stop rotating. (Def. App. 038, K. Erwin Dep. 37:10-16.) Mrs. Erwin's "standard practice" when operating the mower was to disengage the blades then turn off the mower, but when she was mowing, the blades were always engaged, even when she stopped. (Def. App. 038-39, K. Erwin Dep. 38:25-39:6.)

During her deposition, Mrs. Erwin was shown an exhibit containing photographs of the Scag Tiger Cub lawnmower involved in the accident. (Def. App. 044-45, K. Erwin Dep. 43:23-44:2.) She confirmed that the photographs depicted the condition of the lawnmower prior to her accident, with the exception of the photographs showing a cut lawnmower belt. (*Id*. 045-46, K. Erwin Dep.

44:25.45:17.)  One of the photographs shows the location of a warning on the lawnmower's deck, which reads:

> WARNING. ROTATING BLADES AND BELTS. Keep hands, feet, and clothing clear.  Keep all guards in place.  Shut off engine and disengage blade clutch before servicing.  Use caution in directing discharge.  Read instruction manual before operating.  DO NOT OPERATE UNLESS GRASS CATCHER, MULCHING KIT, OR DISCHARGE CHUTE IS INSTALLED.

(Def. App. 127.)  Mrs. Erwin confirmed that this warning was on the Scag Tiger Cub lawnmower from the date of purchase to the date of her accident.  (Def. App. 060, K. Erwin Dep. 59:2-15.)

On the day of the accident, Mrs. Erwin was almost finished mowing the lot west of her house when she noticed that leaves had accumulated on the lawnmower's deck and chute.  (Def. App. 062, K. Erwin Dep. 61:3-11.)  She stopped the lawnmower, opened the lawnmower's control arms, and leaned over to brush the leaves from the deck when something caught her hand.  (*Id*. 61:12-14.)  After her hand got caught, Mrs. Erwin disengaged the blades and turned off the lawnmower. (*Id*. 068, 67:22-25.)

She testified that she did not disengage the blades prior to brushing leaves from the lawnmower's deck on the date of the accident because she did not think she was in danger; she didn't think she was close to the belts and pulleys; and she had never disengaged the blades to brush leaves from the deck in the past.  (Def. App. 056-57, K. Erwin Dep. 55:18-56:5; 067-68, 67: 19-2; 16-18.)

Plaintiffs allege that the area of the lawnmower that caused Mrs. Erwin's injuries "was not protected by safety apparatus or other guard(s) against the foreseeable risks and danger of operators' impact with the drive belt under the same or similar conditions that [Mrs. Erwin] encountered." (Compl. ¶ 3.8.)  They also allege that industry standards concerning "necessary warnings" of "foreseeable dangers to end-users" were well-known to Defendant, but Defendant failed to use or incorporate safer alternative designs, even though such designs were known to Defendant, available in the market, and economically feasible and technologically available.  (*Id.* ¶ 3.9, 3.10.)

## II.  LEGAL STANDARDS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord*

*Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted.'" *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006). The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); Bayle, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523. "[T]he

court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); s*ee Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility.  *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).  The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor.  *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (2012); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).  The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'"  *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux*, 402 F.3d at 540).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence."  *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012).  "If the [nonmoving party's] theory is . . . senseless, no reasonable

jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 Fed.Appx. 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012); RSR Corp. v. Int'l Ins. Co., 612 F.3d 851, 857 (5th Cir. 2010); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394

F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (internal quotations omitted). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

Plaintiffs seek to hold Defendant strictly liable for Mrs. Erwin's injuries. Plaintiffs claim that the Tiger Cub model lawnmower (hereinafter, the "Lawnmower") was "defectively designed and lacked adequate warnings regarding the risk of injury due to its alleged design defects. (*See* Compl. ¶¶ 4.1-4.6.)  Plaintiffs also assert claims for negligence (*see id*. ¶¶ 5.2-5.3) and gross negligence (*see id*. ¶ 6.4).

Plaintiffs allege that this Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a), because Plaintiffs are citizens of Texas and Defendant is a citizen of Wisconsin, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*See* Compl. ¶¶ 1.1, 1.2, 1.4, 2.1.) Federal district courts possess diversity jurisdiction over civil cases in which the amount in controversy exceeds $75,000 and there is complete diversity among the parties.  28 U.S.C. § 1332(a).  Diversity of citizenship exists between the parties only

if each plaintiff has a different citizenship from each defendant.  *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case, *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), and "may raise subject matter jurisdiction sua sponte," *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005).  Defendant does not contest that Plaintiffs are Texas citizens and admits that it is a Wisconsin corporation.  (*See*, *e.g.*, Def. Br. at 3.)  Accordingly, the undersigned finds that diversity of citizenship has been sufficiently established, and there is no reason for the Court to sua ponte further question its jurisdiction.

Defendant moves for summary judgment on all claims, arguing that the Lawnmower is not unreasonably dangerous as designed; Defendant had no duty to warn users about the danger associated with the Lawnmower's moving belts as the danger is open and obvious; and it cannot be found negligent with regard to design because the Lawnmower is not unreasonably dangerous based on the way it was designed.

The undersigned finds that there is a genuine dispute as to material facts relating to Plaintiffs' design-defect claim based on whether the lack of a guard made the Scag Tiger Cub mower unreasonably dangerous and the availability of a safer alternative so as to prevent a user from coming into contact with the belts and pulleys while the Lawnmower was in operation.  The undersigned also finds there is a triable question of fact as to whether the warning on the lawnmower's deck provided

sufficient notice of risk of injury in light of the controverted evidence concerning whether the risk was "open and obvious."  Because Plaintiffs' product liability claims survive summary judgment, so do their negligence claims.

## A.    Product Liability

### 1.  Applicable Law: Design Defect

"The duty to design a safe product is 'an obligation imposed by law.'"  *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997) (quoting *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex. 1967)); *accord Robins v. Kroger Co.*, 982 S.W.2d 156, 161 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  "A design defect renders a product unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use."  *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 769 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999)).

To prevail on a design defect claim under Texas law, plaintiffs must prove three elements: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery.  *Timpte Indus. Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256-57 (Tex. 1999); *see* Tex. Civ. Prac. & Rem. Code § 82.005(a).

Texas courts employ a risk-utility analysis to determine whether a product has a design defect that renders it unreasonably dangerous.  *See Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 239 (5th Cir. 2003); *Hernandez*, 2 S.W.3d at 254-56, 258;

*Sanchez*, 997 S.W.2d at 588; *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 369-70 (Tex. App—El Paso 2011, no pet.); *see also Grinnell*, 951 S.W.2d at 426 n.1; *Honda of Am. Mfg., Inc. v. Norman*, 104 S.W.3d 600, 604 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). "The objective is to hold manufacturers of products designed with excessive risks accountable, but at the same time, to protect manufacturers of products that are 'safe enough.'" *Robins*, 982 S.W.2d at 161 (citations omitted). Under the risk-utility analysis, the court must consider:

(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;

(2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;

(3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;

(4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and

(5) the expectations of the ordinary consumer.

*Grinnell*, 951 S.W.2d at 432; *see also Timpte Indus.*, 286 S.W.3d at 311-12; *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 8 (Tex. 2015).

Whether a product is unreasonably dangerous in light of its risk and utility is generally a question of fact for the jury, but a court may decide it as a matter of law "if reasonable minds cannot differ on the risk-utility analysis considerations." *Hernandez*, 2 S.W.3d at 260–61; *see also Genie Indus.*, 462 S.W.3d at 10 (stating that risk–utility "balancing is for the jury unless the evidence allows but one reasonable

conclusion"); *Timpte Indus.*, 286 S.W.3d at 312 ("Although whether a product is defective is generally a question of fact, in the appropriate case, it may be determined as a matter of law.").

Under Texas law, "liability for a design defect may attach even if the defect is apparent." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 383 (Tex. 1995). "The fact that a product user is or should be aware of the existence and avoidability of dangers inherent in a product's use that are obvious, commonly known, or warned against, is an important consideration in determining whether the product is unreasonably dangerous—and may even be decisive in a particular case—but in general, the obviousness of danger "in and of itself is not an absolute bar . . . to liability for a defective design." *Hernandez*, 2 S.W.3d at 258; *see also Timpte Indus.*, 286 S.W.3d at 312.

The second element in a design-defect claim requires the existence of a "safer alternative design." "Safer alternative design" is statutorily defined as "a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury . . . without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge." Tex. Civ. Prac. & Rem. Code § 82.005(b). "This design need not be actually built and tested; a plaintiff must show only that the alternative design was 'capable of

being developed.'" *Genie Indus.*, 462 S.W.3d at 7 (quoting *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex. 1999)).

"The focus on a design defect claim . . . is whether there was a reasonable alternative design that, at a reasonable cost, would have reduced a foreseeable risk of harm." *Timpte*, 286 S.W.3d at 314. Absent evidence of a safer alternative, a product is not unreasonably dangerous as a matter of law. *Caterpillar, Inc.*, 911 S.W.2d at 384. Nevertheless, the reasonableness of an alternative design is generally a question of fact for the jury. *See Timpte*, 286 S.W.3d at 311; *accord Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 895, 900 (E.D. Va. 2010).

The third element refers to a "producing cause." A "producing cause" is something that is a substantial and but-for cause of the event at issue. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

### 2. Applicable Law: Marketing Defect (Failure to Warn)

Failure to warn and marketing defect are essentially the same in the Fifth Circuit. *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F. 3d 753, 772 (5th Cir. 2018); *Bryant v. Giacomini, S.p.A.*, 391 F. Supp. 2d 495, 503 (N.D. Tex. 2005) ("In a marketing defect ('failure-to-warn') case, the claimant must show that the warning was defective, and that the defect was the producing cause of the injury.")

"Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *Grinnell*, 951 S.W.2d at 426. "A product may be unreasonably dangerous if a manufacturer fails

to warn of a foreseeable risk arising from the use of the product, and the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir. 2001) (quoting *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549-50 (Tex. App.—San Antonio 2001, no writ)). "The aim of a marketing defect claim is to impose liability where the failure to warn *itself* caused a product to be unreasonably dangerous." *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 767 (W.D. Tex. 2020) (original emphasis) (citing *Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W.3d 513 (Tex. App.—Fort Worth 2007, no pet.)).

When a warning is required, a defendant's failure to warn of a product's potential risks is considered a "marketing defect" under Texas law. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 377 (Tex. 1984). The existence of a duty to warn is a question of law. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993). In circumstances where a warning is required but not given, or given inadequately, a "plaintiff must show both that the warning was defective and that it was the producing cause of the plaintiff's injury." *Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 94 (Tex. App.—Texarkana 2000, no pet.) (citation omitted).

To establish a strict products liability marketing defect claim, a plaintiff must prove the following elements:

> (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist;

17

(2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed;

(3) the product must possess a marketing defect;

(4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and

(5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 824 (Tex. App.—Fort Worth 2018),

*aff'd*, 627 S.W.3d 197 (Tex. 2021).

### 3. Applicable Law: Expert Testimony

"[E]xpert testimony is generally encouraged if not required to establish a products liability claim." *Id.* at 42. "Expert testimony is required when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). "In some cases, expert testimony may not be required. Whether expert testimony is required depends on whether the issue involves matters beyond 'the general experience and common understanding of laypersons.'" *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 204 (Tex. App.—Texarkana 2008, no pet.) (quoting *Tamez*, 206 S.W.3d at 583). "Proof other than expert testimony will support a jury finding only when the jurors' common understanding and experience will allow them to make that finding with reasonable probability." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). "Whether expert testimony is necessary to prove a matter or theory is a question of law." *Tamez*, 206 S.W.3d at 583.

Expert testimony is often required to show that a safer alternative design existed. *Norman v. Grove Cranes U.S., L.L.C.*, No. 17-20631, 2018 WL 4339817, at *3–4 (5th Cir. Sept. 10, 2018) (unpublished) ("[N]umerous intermediate Texas courts and federal district courts have granted judgments in favor of defendants where no admissible expert testimony was offered to prove the existence of a safer alternative design.").

## B.    Defendant's Evidentiary Objections

In its reply brief, Defendant advances objections to certain items of evidence proffered by Plaintiffs in their response brief and appendix.[1]  Defendant argues that the evidence is either not authenticated, inadmissible, or irrelevant.  (*See* Reply at 2-7, 17-19.)  First, Defendant objects to photos of various competitor lawnmowers presented in Plaintiffs' response brief and their appendix.  (*See* Reply at 2-5) (citing Pl. Br. at 5-6; Pl. App. 652-62).)  Defendant contends that these photographs are inadmissible because they were not properly authenticated.  (*See id*. at 4-5.)

Next, Defendant objects to screenshots from the Scag website.  (*See* Def. Br. at 5-6) (citing Pl. Br. at 1-2; Pl. App 663-64).)  The screenshots are essentially

---

[1] Objections to evidence offered in support of, or in opposition to, motions for summary judgment are considered in conjunction with the actual motion for summary judgment as opposed to a separate motion to strike.  *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("Under the now-applicable Rule 56(c)(2) . . . it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material."); *Smith v. Palafox*, 728 Fed. App'x 270, 275 (5th Cir. 2018) (citing *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) ("[T]he new rule allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence.'")).

advertising statements from the website's "Home" and "About Us" pages.  The "Home" page describes Scag and its mowers as "Simply the Best."  (*See* Pl. App. 663.)  The "About Us" page proclaims: "[Scag's] innovation and attention to quality is known and respected throughout the industry. If you are looking for the highest-quality, best-built, best-cutting lawn mower or debris/turf management equipment proudly made in the USA, look no further."  (Pl. App. 664.)  Defendant contends that this evidence is irrelevant because Plaintiffs have not established that the statements on the website were made at or around the time Plaintiffs purchased their lawnmower.  (*See* Def. Br. at 5-6.)

Finally, Defendant challenges evidence proffered by Plaintiffs to argue that the Lawnmower is unreasonably dangerous.  (*See* Reply at 17-19.)  Plaintiffs' evidence in that regard includes an abstract of an article from the American Journal of Emergency Medicine, titled "Lawnmower injuries presenting to the emergency department: 2005-2015" (the "AJEM Abstract") (Pl. App. 649), and a riding lawnmower safety fact sheet posted on the website of the Texas Department of Insurance (the "Safety Fact Sheet") (Pl. App. 650-51).

The Federal Rules of Evidence "apply to proceedings before[ ] United States District Courts."  Fed. R. Evid. 1101(a). When federal courts exercise diversity jurisdiction over state-law claims, the court applies state substantive law, but federal procedural law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  Accordingly, the Federal Rules of Evidence govern the admissibility of evidence in diversity cases. *Certain Underwriters at Lloyds London v. W. 82nd Storage Zone, LLC*, No. 5:20-CV-044-

20

H, 2021 WL 12300170, at *5 (N.D. Tex. May 20, 2021) (citing *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 280 (5th Cir. 1987) ("We note first that in a diversity case, the Federal Rules of Evidence govern the admissibility of evidence."); *Reed v. Gen. Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985) ("The Federal Rules of Evidence, rather than state rules, therefore govern the admissibility of evidence in diversity cases, including questions of the admissibility of evidence of insurance."); *Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 609 F.2d 820, 821 (5th Cir. 1980) ("Even in diversity cases, the Federal Rules of Evidence govern the admissibility of evidence in the federal courts.").

"The essential prerequisite of admissibility is relevance." *Miciotto v. Hobby Lobby Stores, Inc.*, No. 21-30456, 2022 WL 3210686, at *4 (5th Cir. Aug. 9, 2022) (citing *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). *See Celotex Corp.*, 477 U.S. at 324. To qualify as competent summary judgment evidence, documents must be authenticated and must be capable of being presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). While a document cited as summary judgment

evidence is most commonly authenticated by affidavit, any method of authentication available under the Federal Rules of Evidence will suffice. *See Sport Supply Grp., Inc. v. Savage*, No. 3:10-CV-913-O, 2011 WL 13234197, at *5 (N.D. Tex. Dec. 22, 2011) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007)).

### 1. The undersigned need not resolve Defendant's objections to screenshots from the Scag website.

Because the undersigned has not found it necessary to consider these contested screenshots for purposes of this summary judgment opinion, Defendant's objections need not be resolved. *See BB Energy LP v. Devon Energy Prod. Co. LP*, No. CIV.A. 3:07-CV-0723-, 2008 WL 2164583, at *3 (N.D. Tex. May 23, 2008) ("The Court does not need to evaluate the admissibility of evidence that is not necessary to its summary judgment ruling."); *see also Liszt v. Karen Kane, Inc.*, No. Civ. A. 3:97-CV-3200-L, 2001 WL 739076, at *4 (N.D. Tex. June 26, 2001) ("Often, challenged items of evidence will not affect the court's determination of the issues, and a resolution of the admissibility will be unnecessary.").

### 2. Defendant's objections to the AEJM Abstract and the Safety Fact Sheet are overruled.

As noted above, under Texas law, "[a] product is unreasonably dangerous when its risk outweighs its utility." *Genie Indus., Inc.*, 462 S.W.3d at 6. Plaintiffs proffer the AJEM Abstract and the Safety Fact Sheet to show that "[r]isks of serious injury and death [from using lawnmowers] are prevalent." (Pl. Br. at 9.) The data analyzed in the AJEM Abstract was taken from the Consumer Product Safety Commission's ("CPSC") National Electronic Injury Surveillance System for the

years 2005 to 2015.  (*See* Pl. App. 649.)  The Safety Fact Sheet similarly cites

estimates from the CPSC regarding deaths and injuries specifically related to riding

lawnmowers.  (*See* Pl. App. 650-51.)

As an initial matter, the information reflected in the AJEM Abstract and the

Safety Fact Sheet is relevant evidence regarding whether the Lawnmower was

unreasonably dangerous as designed.  *See* Fed. R. Evid. 401.  As to admissibility,

Defendant contends that the AJEM Abstract and the Safety Fact Sheet are

inadmissible because Plaintiffs failed to provide "adequate predicate."  (*See* Reply at

17.)  Relying on Texas law, Defendant argues that, to qualify as probative evidence

in Texas courts "[e]vidence of other accidents, near accidents, or related similar

events," an adequate predicate must first be established.  (*Id*. (citing *In re H.E.B.

Grocery Co.*, 375 S.W.3d 497, 502-03 (Tex. App.—Houston[14th Dist.] 2012, orig.

proceeding); *Henry v. Mrs. Baird's Bakeries*, 475 S.W.2d 288, 294 (Tex. Civ. App.—

Fort Worth 1971, writ ref'd n.r.e.)).)  Defendant's argument lacks merit for two

reasons.

First, the cases cited by Defendant are inapposite, and therefore unpersuasive,

as they both involve admissibility of evidence of similar accidents in slip-and-fall

personal injury cases.  *See In re H.E.B. Grocery Co.*, 375 S.W.3d 497; *Henry*, 475

S.W.2d 288.  More importantly, however, the Federal Rules of Evidence, rather than

state rules, govern the admissibility of evidence in diversity cases, as discussed above.

*See, e.g.*, *Reed*, 773 F.2d at 663.  Furthermore, Defendant does not argue, nor does the

undersigned find any reason to conclude, that Texas procedural law, rather than the

Federal Rules of Evidence, is applicable here because a state law causes a "direct collision" with a federal rule. *See Rivera v. Autotransportes Fronterizos, M.G., S.A. De C.V.*, No. 7:21-CV-00428, 2022 WL 3069290, at *3 (S.D. Tex. Aug. 3, 2022) (citing *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011)).

In any event, the undersigned elects to take judicial notice of the AJEM Abstract and the Safety Fact Sheet pursuant to Federal Rule of Evidence 201. Federal Rule of Evidence 201 allows courts to take judicial notice of a fact that "is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction" or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(c). As noted above, both the AEJM Abstract and the Safety Fact Sheet rely on data from the CPSC.[2] (*See* Pl. App. 649, 650-51.) In addition, the AJEM Abstract is published on the website of the National Center for Biotechnology Information ("NCBI"), a division of the National Library of Medicine ("NLM") at the National Institutes of Health ("NIH").[3] The undersigned finds that CPSC and NIH/NLM/NCBI are government entities whose accuracy cannot reasonably be questioned. *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 354 n.5 (5th Cir. Aug. 1, 2011) (noting that the Court of Appeals has, "in the past, taken judicial notice of

---

[2] CPSC is an independent federal regulatory agency formed in 1972 with a mission to protect the public against unreasonable risks of injury or death from consumer products through education, safety standards activities, regulation, and enforcement. *See* CPSC website, https://www.cpsc.gov/About-CPSC (last visited Mar. 6, 2025).

[3] The NCMI website also provides a link to the full text of the article. *See* https://www.sciencedirect.com/science/article/abs/pii/S0735675718300317?via%3Dihub.

information posted on a government website, *see, e.g.*, *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005)"); *see also Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir.2005) (Fifth Circuit taking judicial notice of Texas agency's website); *Hall v. Witron Integrated Logistics, Inc.*, No. 4:21-CV-477, 2023 WL 4269760, at *5 (E.D. Tex. June 29, 2023) (taking judicial notice of OSHA report of injuries from unguarded or inadequately guarded machinery and finding it created a genuine issue of material fact regarding whether the product was unreasonably dangerous as designed).

Furthermore, the undersigned has independently reviewed the websites containing the evidence at issue and verified that the information conforms with the information presented in Plaintiffs' appendix. (*Compare* Pl. App. 650-51 *with* https://www.tdi.texas.gov/tips/safety/lawnmower.html; *compare* Pl. App. 649 *with* https://pubmed.ncbi.nlm.nih.gov/29395756/.) Accordingly, Defendant's objections to the AJEM Abstract and the Safety Fact Sheet are overruled.

### 3. Defendant's objections to Plaintiffs' photographs of competitor products are overruled.

Plaintiffs include "exemplar photos" of various competitor lawnmowers on pages 5 and 6 of their response brief (Pl. Br. at 5-6) and pages 652 to 662 of their appendix (Pl. App. 652-62). Plaintiffs allege that Defendant's failure to place a guard around the belts and pulleys on the Tiger Cub mower "could cause extreme risk of injury – as happened with Ms. Erwin." (Pl. Br. at 5.) Plaintiffs also allege that these exemplar photos from competitors show that "[o]ther manufacturers/sellers

design their belts and pulleys to be fully enclosed or encapsulated, so as to NOT allow users to come in contact with the belts and pulleys." (*Id.* at 6.) Defendant contends that these photographs are inadmissible because they were not properly authenticated. (*See* Reply at 4-5 (citing Pl. Br. at 5-6; Pl. App. 652-62).)

Plaintiffs aver that the photos were produced by their expert, Kevin B. Sevart, and authenticated by the affidavit of Plaintiffs' counsel, Christopher S. Ayres. (*See* Pl. Br. at 6; Pl. App. 668-69.) In paragraph 3 of his affidavit, Ayres avers "[he] is familiar with the documents attached in the Appendix filed by Plaintiffs. The records are kept by Ayres Law Office P.C. in the regular course of business, and it was the regular course of business of Ayers Law Office P.C. for any employee or representative of Ayres Law Office, with knowledge of the `act, event, condition, opinion, or diagnosis, that was recorded, to make this record or to transmit the information to be included in this record. The record was made at or near the time or reasonably soon after the act, event, or condition that was recorded. The records are duplicates of the original and nothing has been removed or deleted from the original files before making these copies." (Pl. App. 668-669.)

The record reflects that Sevart testified at a deposition on September 19, 2024. (*See* Pl. App. 526-648.) Questioning throughout the deposition, including questioning by Defendant's counsel, frequently referred to Sevart's report and

accompanying appendices, which include the photographs at issue.[4]  (*See, e.g.*, *id*. 528, 530, 540, 548, 552, 558, 561, 571, 602.)  Sevart's report, however, was not marked as a deposition exhibit (*see id*. 528), nor has either party proffered Sevart's report as summary judgment evidence.

Sevart testified that some of the photographs included in Appendix A of his report were provided by Thomas Berry, another engineer with whom Sevart shares office space.  (*See id*. 537, 566-67.)  Sevart testified that he provided the photos as "examples of guards that[,] essentially[,] the finger probe couldn't get anywhere in the vicinity of the nip point."  (*Id*. 595.)   Plaintiffs contend that these photographs showing the use of alternative designs by competitors provide "at least some evidence supporting the jury's finding of product defect."  (Pl. Br. at 11 (quoting *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998)).)

Defendant objects to the photographs because Ayres failed to state that he is familiar with the lawnmowers depicted in the photographs; failed to assert that the photographs were accurate representations of the lawnmowers, or that he actually observed the lawnmowers depicted in the photographs.  (*See* Reply at 5.)  Defendant similarly complains that Sevart failed to testify that he was familiar with the

---

[4] The affidavit of Christopher P. Riordan, provided in support of Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment, states that Riordan "reviewed the June 14, 2023 report of Plaintiffs' expert, Kevin B. Sevart and the Appendices that accompany the report, including Appendix A."  (*See* Dkt. No. 36 ("Riordan Aff.") ¶ 2).) Riordan states the photographs at issue are from Appendix A of Sevart's June 14, 2023 report.  (*Id*. ¶ 4.)

lawnmowers depicted in the photographs, or that the photographs were accurate representations of the lawnmowers.  (*See id.*)

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  A party can choose to satisfy this requirement by submitting "[t]estimony that an item is what it is claimed," either through a supporting declaration or affidavit.  Fed. R. Evid. 901(b).  But there are other ways that a proponent can satisfy the authentication requirement.  For instance, a document may be authenticated by considering the appearance, contents, substance, or other distinctive characteristics of the item, taken together with all the circumstances.  *Id.* 901(b)(4).  Under Federal Rule of Evidence 902, some evidence may also be self-authenticating.  *Id.* 902.

As the Fifth Circuit has explained, "[a] proponent 'may authenticate a document with circumstantial evidence, 'including the document's own distinctive characteristics and the circumstances, surrounding its discovery.'"  *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (quoting *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993)); *see also* Fed. R. Evid. 901(b) ("The following are examples only—not a complete list—of evidence that satisfies the [authentication] requirement: . . . (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.").  "Authentication is not a heavy burden."  *Mockingbird Dental Grp., P.C. v. Carnegie*, No. 4:15-cv-404-A, 2015 WL 3824488, at *1 (N.D. Tex. June

28

19, 2015).  "[C]ircumstantial evidence or testimony by a knowledgeable witness can be sufficient."  *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015).

The undersigned concludes that Plaintiffs satisfy the authentication requirement to support a finding that these photographs are what Plaintiffs claim them to be.  In addition to Ayres's affidavit (Pl. App. 668-69), wherein he states (among other things) that the records were exchanged in discovery, the photographs are authenticated with other "circumstantial evidence," including "the circumstances surrounding its discovery."  *In re McLain*, 516 F.3d at 308 (internal quotation marks omitted).  As discussed above, Sevart's deposition frequently referred to Sevart's report, which included the photographs at issue in an appendix.  (*See, e.g.*, Pl. App. 528, 530, 540, 548, 552, 558, 561, 571, 602.)  And although Sevart's report has not been submitted as summary judgment evidence by either party, Riordan's affidavit states that he "reviewed the June 14, 2023 report of Plaintiffs' expert, Kevin B. Sevart and the Appendices that accompany the report, including Appendix A," and the photographs at issue are from Appendix A of Sevart's report.  (*See* Riordan Aff. ¶¶ 2, 4.)

Riordan goes on to explain how each photograph is identified in Appendix A of Sevart's report, including the model name and number of the lawnmowers depicted in each photograph.  (*Id.* ¶ 5-9.)  Riordan's affidavit, therefore, provides additional basis for authentication of the disputed photographs.  Furthermore, Sevart presumably could be expected to testify at trial as to the contents of his report,

including the photographs, and the weight of that evidence can best be determined by a jury. Because there is sufficient evidence to satisfy the authentication requirement, Defendant's objection to these photographs is overruled.

## C.    Plaintiffs' Product Liability Claims

Plaintiffs assert two product liability theories: design defect and marketing defect. Having considered Defendant's challenges to each claim, the undersigned finds that Plaintiffs demonstrate genuine issues of fact for both claims, and these claims should proceed to trial.

### 1.    Genuine issues of material fact exist regarding a finding of design defect.

As discussed above, to prevail on a design defect claim under Texas law, plaintiffs must prove (1) the design was unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause or proximate cause of the incident in question. *Timpte Indus.*, 286 S.W.3d at 311; *Hernandez*, 2 S.W.3d at 256-57.

To determine whether a product is unreasonably dangerous, courts generally apply a risk-utility analysis, which includes five factors. *See supra* Section III.A.1. (citing *Grinnell*, 951 S.W.2d at 432). Typically, the question of whether a product is unreasonably dangerous is a fact question for the jury to decide, although there are limited circumstances in which this may be determined as a matter of law. *Emerson Electric Co. v. Johnson*, 627 S.W.3d 197, 205 (Tex. 2021) ("[T]he jury must balance this evidence to decide whether the product is or is not unreasonably dangerous; we

30

do not disturb that balance unless the evidence allows but one reasonable conclusion.") (internal citation and quotation marks omitted); *see also Timpte Indus.*, 286 S.W.3d at 312; *see also Nelson v. Sunbeam Products*, Inc., 579 F. Supp. 3d 857, 866 (E.D. Tex. 2022).

Defendant argues that whether the Lawnmower is unreasonably dangerous rests on a determination of the fourth factor of the risk-utility analysis—the fact that the risk of the alleged defect is open and obvious. (*See* Def. Br. at 11-13.) Defendant contends that because the Lawnmower contained suitable warnings and because Mrs. Erwin was aware of the danger and had the ability to avoid the danger, the Lawnmower cannot be unreasonably dangerous as a matter of law. (*See id*.) The undersigned find this argument unpersuasive. "[T]he fact that the alleged defect is open and obvious, although an important consideration, is generally not determinative in Texas." *Timpte Indus.*, 286 S.W.3d at 314 (citing *Hernanadez*, 2 S.W.3d at 258).

Furthermore, the five factors of the risk-utility analysis must be viewed holistically. *See Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1041–42 (5th Cir. 2011) (citing *Grinnell*, 951 S.W.2d at 432). Viewing the summary judgment record and the factors in their totality, the undersigned finds that whether the Scag Tiger Cub lawnmower was unreasonably dangerous presents a genuine dispute as to a material fact that must be resolved by a jury. The following facts are sufficient to conclude there is a fact issue in this case.

First, the gravity and likelihood of injury is supported by the AEJM Abstract and the Safety Fact Sheet, as well as the testimony of Mrs. Erwin and Plaintiffs' expert, Kevin Sevart. The AJEM Abstract reported that there were an estimated 934,394 lawnmower injuries treated in the United States during this period, an average of 84,944 injuries per year; and 22 percent of those injuries were comprised of hand and finger injuries. (*See* Pl. App. 649.) The abstract concludes by stating, "[l]awn mowers continue to account for a large number of injuries every year in the United States;" there was no decrease in injuries from 2005 to 2015, and "[p]reventative measures should take into account the epidemiology if these injuries." (*Id.*) The Safety Fact Sheet reported that over 35,000 injuries and nearly 100 deaths related to riding lawnmowers occur each year in the United States.[5] (*See* Pl. App. 650-51.) Although the fact sheet reports that "[t]hese accidents are mostly due to loss of stability and operators thrown from or falling under the equipment," it also warns against reaching around or beneath a running mower and advises operators to shut off the engine before removing debris. (*Id.*)

Sevart testified that "serious injuries [have been] a constant through the history of mowers." (Pl. App. 626, Sevart Dep. 101:13-14.) He also testified that "people don't generally recognize how close a hazard may be in reaching in [ ] areas [and] just didn't realize how close a hazard was to, say, the edge of the deck or

---

[5] The undersigned notes that, based on a comparison of the AJEM Abstract data (Pl. App. 650-71) with the Safety Fact Sheet data (Pl. App. 649), injuries resulting from riding lawnmowers reflect approximately 41 percent of all lawn mower injuries.

something like that. They just don't have that understanding." (Pl. App. at 627-28, Sevart Dep. 102:23-103:5.) Sevart further testified: "I think people generally understand that they need to leave the guards on the machine and that's the function of the guard, is, you know, actually provide protection." (Pl. App. 628, Sevart Dep. 103:22-24). "When you provide a guard[,] it needs to actually be [ ] effective as you anticipate people will rely upon [them]." (Pl. App. 629, Sevart Dep. 104:11-13.)

Mrs. Erwin testified that while mowing on the day of her injury, leaves began to accumulate on the deck or chute of the mower by her feet, which had happened before, and she reached down to brush the leaves off the decking, as she had done before without incident. (Pl. App. 501-02, K. Erwin Dep. 48:19-50:14.) She had never before come in contact with the belts or pulleys when she brushed the leaves off while riding without turning the mower off (*id.* 502, K. Erwin Dep. 52:2-22), and although she knew it was dangerous to get her hand near the moving belts, "[she] didn't think [she] was in danger" because "[she] didn't think [she] was close to the belt and pulleys" (*id.* 503, K. Erwin Dep. 55:18-57:4).

Based on the foregoing, whether the utility of the Scag Tiger Cub lawnmower, outweighs the gravity and likelihood of injury from use or foreseeable misuse is a fact question for the jury. *See Hernandez*, 2 S.W.3d at 257 (citations omitted) (noting Texas law that foreseeable misuse gives rise to claims for design defect); *see also Martinez*, 977 S.W.2d at 337 (noting that "it is not at all unusual for a person to fail to follow basic warnings and instructions," and even if plaintiff was injured only by

"[i]gnoring . . . his own good sense," this does not remove the balancing process from the jury) (internal citations omitted).

Second, Sevart testified that he provided photos of competitor lawnmowers to demonstrate that it is "essentially industry practice [ ] to provide guards that extend well beyond the actual pulley and nip point." (*Id.* 597, Sevart Dep. 72:3-9.) He also opined that the existing shield on the Scag Tiger Cub mower "could be extended to prevent the finger probe (*id.* 595-96, Sevart Dep. 70:19-20; 71:8-13), and the additional cost would be "pennies" (*id.* 598, Sevart Dep. 73:18-21), when "spread out over [ ] a number of mowers" (*id.* 599, Sevart Dep. 74:7-9). Sevart further testified that the existing sheet metal "could just essentially be extended" to guard the belt and pulley. (*Id.* 620, Sevart Dep. 95:15-18.)

Based on the basic simplicity of Sevart's suggestion—simply extending the sheet metal on the guard—the undersigned cannot say as a matter of law that Plaintiffs have not established a factual issue as to the existence of a safer alternative design. While Defendant may contest whether the alternative design suggested by Plaintiffs' expert was economically and technologically feasible, or that it would substantially reduce risk of the type injury suffered by Mrs. Erwin, ultimately that is for the factfinder to determine.

Next, although Defendant argues that the danger was both open and obvious, as well as adequately warned against by way of the warning on the Lawnmower's deck (*see* Def. Br.13-15; Def. App. 127), testimony from Mrs. Erwin and Sevart support a finding that this, too, is a factual dispute. Mrs. Erwin testified that she did

not believe she was putting herself at risk because she had never before come in contact with the belts or pulleys when she brushed the leaves off while riding without turning the mower off.  (*Id.* 502, K. Erwin Dep. 50:6-10, 52:2-22.)  She had taken the same action for over ten years (*id.*) and even "several" times on the same day she was injured (*id.* 505 K. Erwin Dep.63:2-4).  She did not believe she was in danger because "[she] didn't think [she] was close to the belt and pulleys." (*Id.* 503, K. Erwin Dep. 55:18-57:4.)

Sevart similarly testified that users do not recognize how close a hazard may be to the edge of the deck.  (*See* Pl. App. at 627-28, Sevart Dep. 102:23-103:5.)   He also testified that because users generally understand the function of the guard on a lawnmower, when a guard is provided, "it needs to actually be [ ] effective as you anticipate people will rely upon [them]."  (Pl. App. 628-29, Sevart Dep. 103:22-104:11-13.)

As noted previously, the fact that a product user is or should be aware of the existence and avoidability of dangers that are obvious, commonly known, or warned against, in general, this fact "in and of itself is not an absolute bar . . . to liability for a defective design." *Hernandez*, 2 S.W.3d at 258; *see also Timpte Indus.*, 286 S.W.3d at 312; *Martinez*, 977 S.W.2d at 337.  Therefore, this presents another factual dispute that should be resolved by a jury.

Because the facts here do not present the exceptional case in allowing for "only one reasonable conclusion" regarding whether the product was unreasonably dangerous as designed, the undersigned finds that there exist genuine issues of

35

material fact, such that the evidence must be balanced by a jury. *Genie Indus.*, 462 S.W.3d at 10

### 2. Genuine issues of material fact exist regarding a finding of marketing defect.

In a marketing defect ("failure-to-warn") case, the plaintiff must show that the warning was defective and that the defect was the producing cause of the injury. *Saenz*, 873 S.W.2d at 359. "Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *Am. Tobacco Co.*, 951 S.W.2d at 426. "A marketing defect is proven when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warning or instructions renders an otherwise adequate product unreasonably dangerous." *Smith v. Robin America*, 773 F. Supp. 2d 708, 714 (S.D. Tex. 2011) (internal citations omitted); *see also Smith v. Aqua–Flo, Inc.*, 23 S.W.3d 473, 480 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Defendant's only argument in opposition to Plaintiffs' marketing defect theory is there was no duty to warn because the danger is open and obvious. (*See* Def. Br. at 16-17.) For many of the reasons discussed above, *see supra* Section III.C.1., the undersigned disagrees.

Mrs. Erwin testified that leaves accumulated on the mower decking; she swept them away with her hand "several" times that day, just as she had done for years without incident; and although she knew it was dangerous to get your hand close to

36

the belts and pulleys while they were running, she proceeded to brush the leaves off the Lawnmower deck and the discharge chute because she did not think she was close to the belt and pulleys. (*See* Pl. App. 503, K. Erwin Dep. 56:10-57:4.) She also testified that over the number of years she used the Lawnmower and brushed leaves from the deck while the belts and pulleys were moving, she never got her fingers close enough to get "nicked or cut or caught," and because of this, she never thought about the risk of getting her fingers caught. (*See id.* 57:11-20.) Mrs. Erwin testified she still has no idea exactly how her fingers became caught in the pulley and the belt. (*Id.* at 507, K. Erwin Dep. 73:11-14.)

Sevart testified that Mrs. Erwin's awareness of running belts or even a placard was insufficient. "[T]he warning [is] just not capable of doing the job because . . . people sometimes don't follow instruction" or they "forget or just have instinctual responses." (Pl. App. 577, Sevart Dep. 53:8-14.) Defendant's counsel questioned Sevart about whether the risk was open and obvious: "It's certainly an open and obvious hazard. I mean, you see belts running in this machine, correct?" (Pl. App. 580, Sevart Dep. 55:15-17.) Sevart responded: "You can see belts. You can't necessarily see a nip point." (*Id.* 55:18-19.) Thus, whether the danger was open and obvious, or whether the actual danger (the nip point) was hidden, is a factual dispute that should be decided by a jury.

Finally, there is factual question regarding the adequacy of the warning placard placed on the Lawnmower's deck. (*See* Def. App. 127; Pl. App. 667.) To recap, the warning reads:

> WARNING. ROTATING BLADES AND BELTS. Keep hands, feet, and clothing clear.  Keep all guards in place.  Shut off engine and disengage blade clutch before servicing.  Use caution in directing discharge.  Read instruction manual before operating.  DO NOT OPERATE UNLESS GRASS CATCHER, MULCHING KIT, OR DISCHARGE CHUTE IS INSTALLED.

(*Id.*)  Defendant points out that Mrs. Erwin testified that the warning placard was on the Lawnmower from the date of purchase to the date of her accident, that she was aware of the warning, and that she understood its meaning—that Defendant wanted her to keep her hands, feet, and clothing clear of the rotating blades and belts.  (*See* Def. Br. at 19 (citing App. 060-061; K. Erwin Dep., 59:16-18; 59:25; 60:9).)

But Sevart testified that the warning placard is ineffective for various reasons.  First, he testified that the warning is ineffective because the placard does not actually face the operator as the mower is driven; rather the placard faces sideways or upside down.  (*See* Pl. App. at 613-14, Sevart Dep.  88:13-89:15.)   According to Sevart, to the extent possible, the warning should be oriented so that it is constantly visible to the operator.  (*See id*. 89:12-15.)  Sevart further testified that the position of the warning placard, below the operator's feet, also inhibited the warning's effectiveness.  (*See id*. 89:8-9.)  And, in some cases, the warning would not be visible to the operator at all.  Sevart testified that it was "reasonably foreseeable" for debris to accumulate on the platform underneath the operator's feet which could obscure the warning so that it may be partly visible or not visible at all.  (*See* Pl. App. at 617-19, Sevart Dep. 93:20-94:8.)

Finally, Plaintiffs point out potential deficiencies in the language used in the warning. (*See* Pl. Br. at 24.) For example, the warning instructs users that they need to "shut off engine and disengage blade clutch before servicing." (*See* Pl. App. 667.) It is not clear that this warning also applies to normal use, such as reaching down to clear debris, as Mrs. Erwin did when she was injured.

Accordingly, the undersigned finds that there is a genuine issue of material fact regarding whether the risk of danger posed by the moving belts was open and obvious such that Defendant had no duty to warn, as well as a genuine issue of material fact regarding whether the warning provided was sufficient.

## D.    Plaintiffs' Negligence Claims

To recover on a negligence claim arising out of a product defect, the plaintiff must prove each of the following elements: (1) the defendant failed to exercise ordinary care in the design, manufacturing, or marketing of the product; and (2) the defendant's breach proximately caused the plaintiff's injuries. *See Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978). Plaintiffs sufficiently plead the elements of a negligence claim in their complaint. (*See* Compl. ¶ 5.2.)

"Texas courts have explained that where 'the allegations and evidence are directed to whether the product is unreasonably dangerous and no other potentially negligent conduct is alleged or the subject of evidence, the negligence theories are subsumed by the strict liability theories asserted." *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807–08 (S.D. Tex. 2011) (quoting *Kallassy v. Cirrus Design Corp.*, No. CIV.A. 3:04-CV-0727N, 2006 WL 1489248, at *1 (N.D. Tex. May 30, 2006), *aff'd*,

39

265 F. App'x 165 (5th Cir. 2008) (internal citations omitted)); *see also Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988).

Although Plaintiffs' product liability and negligence are predicated on the same claim, allegations, and evidence—that the defective design and marketing of the Scag Tiger Cub lawnmower was the proximate or producing cause of Mrs. Erwin's injury—because this case is at the summary judgment stage, the undersigned concludes that Plaintiffs' negligence claims should proceed to trial along with their product liability claims. *See Tamez v. Mack Trucks, Inc.*, 100 S.W.3d 549 (Tex. App.—Corpus Christi 2003) (finding that plaintiff was not precluded from bringing multiple theories of recovery at the pre-trial stage), *rev'd on other grounds*, 206 S.W.3d 572 (Tex. 2006); *see also Madden v. Wyeth*, No. 3-03-CV-0167-BD, 2005 WL 2278081, at *2 (N.D. Tex. Sept. 14, 2005) (unpublished). This also applies to Plaintiffs' gross negligence claims under Tex. Civ. Prac. & Rem. Code § 41.001(11). (*See* Compl. ¶ 6.4.) The degree of risk arising from Defendant's conduct and whether the harm to Mrs. Erwin resulted from Defendant's conscious indifference are fact issues that must be resolved by a jury. *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 596 (Tex.1999).

## IV. RECOMMENDATION

Because Plaintiffs have produced adequate evidence to raise a fact issue with respect to their strict product liability and negligence claims, Defendant's Motion for

Summary Judgment (Dkt. No. 27) should be **DENIED**, and Plaintiffs' claims should proceed to trial.

 **SO RECOMMENDED** on March 20, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE OF RIGHT TO OBJECT**

 A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).